Sealed

FILED by _____ D.C.

JUL 18 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. OF FLA. – MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

18 61638

cv-
Williams

| | |
|---|---|
| Alcon Laboratories, Inc., | CIVIL NO. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| Allied Vision Group, Inc. and National Lens LLC, | FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116 |
| Defendants. | |

Mag Valle

Plaintiff Alcon Laboratories, Inc. ("Alcon") brings this action against Defendants Allied Vision Group, Inc. ("AVG") and National Lens LLC ("National Lens") (collectively, "Defendants") and alleges as follows:

## PRELIMINARY STATEMENT

1.      Alcon is a leading producer of soft contact lenses in the United States.  It brings this action to put an end to the sale of counterfeit Alcon contact lenses by Defendants—a dangerous practice that presents a risk to end consumers who are unknowingly receiving (and putting in their eyes) faulty, non-sterile counterfeit contact lenses.

2.      Defendants obtain Alcon contact lenses from unknown sources outside of the United States, outside of Alcon's authorized distribution channels, and offer them for sale in the United States.  Defendants are well aware that purchasing contact lenses through unauthorized retail channels poses a risk that they may be selling products that are not FDA-compliant and/or are materially different from products that Alcon authorizes for sale in the United States.

3.      Alcon has just discovered, however, that Defendants are currently selling *counterfeit* Alcon contact lenses.  These counterfeit contact lenses have packaging that is sophisticated and difficult for a consumer to distinguish from genuine Alcon packaging, except that the plastic blister packs holding the lenses themselves often leak, which means that the contact lenses are not sterile and are likely contaminated.  Nonsterile contact lenses are not safe for consumers to put in their eyes and can potentially cause serious health complications, including blindness.  The availability of these counterfeit contact lenses in the marketplace is a

sf-3916806

serious threat to public safety, causes substantial harm to Alcon's brand, and needs to be stopped immediately.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); and 28 U.S.C. § 1367 (supplemental jurisdiction).

5.     Defendants are subject to personal jurisdiction in this State because Defendants operate their principal place of business within this State.  Because Defendants are subject to personal jurisdiction in this State, they are subject to personal jurisdiction in this District.

6.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (b)(2) in that a substantial part of the events giving rise to the claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

## PARTIES

7.     Plaintiff Alcon, a division of Novartis AG ("Novartis"), is a corporation organized and existing under the laws of the State of Delaware, having its corporate offices and principal place of business at 6201 South Freeway, Fort Worth, Texas 76134.

8.     On information and belief, Defendant Allied Vision Group, Inc. is a corporation wholly owned by New York-based Hammond, Kennedy, Whitney & Company, Inc., and is organized and existing under the laws of the State of Florida, having its principal place of business at 5350 N.W. 35th Avenue, Fort Lauderdale, Florida 33309.

9.     On information and belief, Defendant National Lens LLC is a limited liability company organized and existing under the laws of the State of Florida, having its principal place of business at 5350 N.W. 35th Avenue, Fort Lauderdale, Florida 33309.

10.     On information and belief, Defendants Allied Vision Group, Inc. and National Lens LLC operate out of the same location in Fort Lauderdale, Florida, and are, or have historically been, managed by the same individuals and entities.  On information and belief, Robert Tardell is the president of Allied Vision Group, Inc. and the president and managing member of National Lens LLC.  Defendants jointly operate a nationwide interactive website, www.National-Lens.com, targeting eye care practitioners ("ECPs") throughout the country, who can order individual boxes of lenses for their patients.

2

sf-3916806

## GENERAL ALLEGATIONS

**A.     Alcon's Business**

11.     Alcon was founded in 1947 in Fort Worth, Texas as a small pharmacy focused on sterile ophthalmic products.  It has developed into a world-renowned developer and manufacturer of contact lenses, prescription eye care products, surgical devices for eye care practitioners, and over-the-counter eye care products.  Its mission is to provide innovative products that enhance quality of life by helping people see better.  Alcon's focus is on patients, as seen in its advanced research and development process, as well as its high standards for manufacturing that exceed basic compliance needs.

12.     Alcon is a leading producer of soft contact lenses in the U.S.  It sells contact lenses under several different brands, including AIR OPTIX®, which are its breathable contact lenses offering clear vision and consistent comfort.  Consumers of Alcon products have come to expect a high level of quality from Alcon, due in large part to the regimented and precise manner in which the products are manufactured, packaged, distributed, and marketed.

13.     Alcon has invested significant resources into conducting clinical trials of and obtaining U.S. Food and Drug Administration ("FDA") approval for each of its contact lens products.  It has also spent over 70 years and millions of dollars in advertising creating consumer recognition and confidence in its brands, which relies in large part on recognition of, and confidence in, products bearing Alcon brand names.  These substantial expenditures of time, money, and effort have resulted in a reputation for exceptionally high quality products, including contact lenses.

14.     Today, nearly 40 million Americans wear contact lenses to correct refractive vision defects.  Contact lenses are medical devices regulated by the FDA to ensure their safety and efficacy.  According to their labeling, contact lenses require professional care, and thus patients can only obtain them with a valid prescription.

15.     In the United States, about 90 percent of contact lens wearers wear soft contact lenses, which are generally made of soft, flexible, water absorbing plastics or silicone hydrogel material that allow higher amounts of oxygen to pass through to the cornea.  Most soft contact lenses are replaced daily, weekly, or monthly.

16.     The U.S. Food and Drug Administration regulates daily wear (lenses that are removed each night) contact lenses as Class II (moderate- to high-risk) medical devices and extended wear (lenses that are worn for periods of six nights up to 30 nights) as Class III (high-

3

risk). In its "Focusing on Contact Lens Safety" Consumer Update, the FDA includes the following information regarding prescriptions:

> With a valid prescription, it is possible to purchase contact lenses from pharmacies, optical retailers, and online optical retailers. But be extremely cautious when buying contacts from someone other than your eye care professional.
>
> Contact lenses are NOT over-the-counter (OTC) devices. Companies that sell them as such are misbranding the device and violating FTC regulations by selling contact lenses without having your prescription.

https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm048893.htm.

17.      The FDA provides the following additional important safety information for consumers who may have their prescriptions filled by third parties:

> Make sure that you get the exact brand, lens name, power, sphere, cylinder (if any), axis (if any), diameter, base curve, and peripheral curves (if any) noted on the prescription. If you think you've received an incorrect lens or brand, check with your eye care professional. (The correct brand is important because there are differences in the water content and shape among the brands.) Don't accept any substitution unless your eye care professional approves it.

*Id.*

## B.      Alcon's AIR OPTIX® NIGHT & DAY® AQUA Contact Lenses

18.      Alcon contact lenses are subjected to a variety of inspections and tests as part of the manufacturing process. If any standard is not met, the entire batch is scrapped. If a batch passes inspection, each lens is placed in contact lens solution in primary packaging, which consists of a plastic blister pack that is covered with foil and heat sealed. The plastic blister packs are autoclaved for sterilization and then placed in secondary packaging, which consists of boxes of six, ten, thirty, or ninety lenses, depending on the specific product.

19.      As another quality control and safety measure, Alcon identifies all of the contact lenses that it manufactures with a lot number, and it keeps track of lot numbers for products that it distributes so that it is able to trace the distribution of its products so long as they are distributed only through authorized channels. This allows Alcon to communicate with the

4

appropriate distributors and customers in the rare event of an issue related to the safety or efficacy of any of the contact lenses that it distributes.

20.     Alcon also uses barcodes for each of its products, with each barcode reflecting the product name, the corrective power, the lot number, and the expiration date.  The barcodes are laser ablated on the boxes that comprise the secondary packaging holding the blister packs of lenses, while human-readable corrective powers, lot numbers, and expiration dates are laser ablated on the boxes and on the blister packs.

21.     Alcon takes several additional steps to make sure its lenses are not contaminated before they reach patients.  For example, it uses specialized warehouses that are regularly audited by Alcon and various health authorities, including the FDA.  In addition, it uses only new, heat-treated wood pallets to avoid the cross-contamination that can occur if contact lenses are stored on reused pallets that previously stored toxic chemicals or were exposed to mold.

22.     In about 2001, Alcon's predecessor-in-interest, Ciba-Geigy Corporation, introduced AIR OPTIX® NIGHT & DAY® AQUA contact lenses.  AIR OPTIX® NIGHT & DAY® AQUA lenses are specially designed for individuals who wear their contact lenses while sleeping.  The product delivers a unique, permanent plasma technology for a smooth, continuous surface and high oxygen transmissibility.  The AIR OPTIX® NIGHT & DAY® AQUA contact lenses are FDA-approved for up to 30 days of continuous wear.  They are considered Class III medical devices and are regulated accordingly in the same fashion as other Class III medical devices, such as heart valves.

23.     Because Alcon is highly committed to the quality and safety of its contact lenses, it has also undertaken a variety of measures to stop the counterfeiting of its contact lenses, including working closely with U.S. Customs to stop the import of counterfeit products before they enter the United States.  Alcon and U.S. Customs usually can rely on inaccurate barcodes or human readable lot numbers to identify and seize counterfeit lenses without further testing.  In the rare instances when Alcon discovers that counterfeit Alcon lenses have entered or are being sold in the United States, Alcon acts swiftly and decisively to take legal action with the goal of ensuring that any consumers that have already purchased such lenses are warned and no further counterfeit lenses are sold.

24.     Until Alcon's recent discovery of Defendants' sales of counterfeit AIR OPTIX® NIGHT & DAY® AQUA contact lenses, it had been Alcon's experience that counterfeiters

5

focused on non-corrective color contact lenses.  Thus, these non-corrective color contact lenses were the focus of Alcon's anti-counterfeiting efforts.

### C.    Alcon's Intellectual Property Rights

25.    Alcon has taken all appropriate steps to protect its rights in the trademarks used for its AIR OPTIX® NIGHT & DAY® AQUA products.  Specifically, Alcon owns the registrations set forth below for its ALCON® mark (collectively, the "ALCON Marks").

26.    Alcon owns U.S. Trademark Registration No. 1,055,870 for the mark ALCON® for "contact lens wetting and soaking solutions," among other goods, which issued on January 11, 1977.  Alcon filed an affidavit under Section 15 of the Lanham Act on July 30, 1982, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the ALCON® trademark for the registered goods.

27.    Alcon owns U.S. Trademark Registration No. 3,964,835 for the stylized ALCON® mark shown below for "solutions for use with contact lenses," among other goods, which issued on May 24, 2011.  Alcon filed an affidavit under Section 15 of the Lanham Act on October 26, 2016, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the stylized ALCON® trademark for the registered goods.



28.    Alcon owns U.S. Trademark Registration No. 4,560,685 for the mark ALCON® for "contact lenses," which issued on July 1, 2014.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the ALCON® trademark for the registered goods.

29.    Alcon also owns U.S. Trademark Registration No. 5,412,293 for the stylized ALCON® mark shown below for "contact lenses," which issued on February 27, 2018.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the stylized ALCON® trademark for the registered goods.

sf-3916806

# Alcon

30.     Alcon also owns U.S. Trademark Registration No. 2,717,640 for the mark NIGHT & DAY® for "soft contact lenses," which issued on May 20, 2003.  Alcon's predecessor-in-interest filed an affidavit under Section 15 of the Lanham Act on May 15, 2009, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the NIGHT & DAY® trademark for the registered goods.

31.     Alcon's parent, Novartis, owns the registrations below for marks that are used on Alcon's AIR OPTIX® products (collectively, the "ALCON AIR OPTIX Marks").

32.     Novartis owns U.S. Trademark Registration No. 3,490,248 for the mark AIR OPTIX® for "contact lenses," which issued on August 19, 2008.  Novartis filed an affidavit under Section 15 of the Lanham Act on April 22, 2014, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis's exclusive right to use the AIR OPTIX® trademark for the registered goods.

33.     Novartis owns U.S. Trademark Registration No. 3,490,249 for the AIR OPTIX Logo shown below for "contact lenses," which issued on August 19, 2008.  Novartis filed an affidavit under Section 15 of the Lanham Act on May 9, 2014, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis's exclusive right to use the AIR OPTIX Logo for the registered goods.

I R
PTIX

34.     Alcon has continuously used the ALCON Marks, the ALCON AIR OPTIX Marks, and the NIGHT & DAY® mark in connection with contact lenses since at least as early as

7

sf-3916806

2001.  In addition, Alcon has continuously and exclusively used the mark CIBA on certain of its contact lenses since at least as early as 2001.  The CIBA mark is engraved directly on the AIR OPTIX® NIGHT & DAY® AQUA lenses at issue in this case as well as other contact lenses that were first introduced by Alcon's predecessor-in-interest, Ciba-Geigy Corporation, and that continue to be manufactured by Alcon.  Due to Alcon's continuous and exclusive use of each of these marks in connection with contact lenses, Alcon has acquired common law rights in each of these marks, including the CIBA mark, for use in connection with contact lenses.

35.     As a result of Alcon's expenditures and efforts, the ALCON Marks, the ALCON AIR OPTIX Marks, the NIGHT & DAY® mark, and the CIBA mark (collectively, "the ALCON Contact Lens Marks") have come to signify the high quality of Alcon's contact lens products, and the favorable reputation and goodwill associated with these marks belong exclusively to Alcon and its parent, Novartis.

### D.     Defendants' Business and Counterfeiting

36.     Defendants operate their business out of Fort Lauderdale, Florida.  Defendants store and ship their contact lenses from Fort Lauderdale.

37.     Defendants' business consists of at least three parts: *First*, on information and belief, Defendants sell contact lenses wholesale to ECPs and resellers throughout the country. *Second*, on information and belief, Defendants do business with resellers to fulfill orders from individual customers on behalf of those resellers.  *Third*, Defendants jointly operate a highly interactive website, www.National-Lens.com, targeting ECPs throughout the country who can order individual boxes of lenses for their patients.  On information and belief, through these three lines of business, Defendants transact significant business with resellers, customers, and ECPs.

38.     Defendants regularly import hundreds of thousands of dollars' worth of contact lenses into the United States.

39.     Additionally, on information and belief, Defendant AVG works with several resellers, including LD Vision Group Inc. ("LD Vision") and EZContacts.com ("EZContacts"), among others, fulfilling contact lens orders on their behalf.  LD Vision operates several websites, including www.lensdiscounters.com, www.opticontacts.com, www.postalcontacts.com, www.lens247.com, and www.contacts1st.com.  EZContacts operates at least two websites, www.ezcontacts.com and www.ezcontactsusa.com.

40.     Starting in about May 2018, European consumers began returning AIR OPTIX® NIGHT & DAY® AQUA contact lenses to Alcon with complaints that they were not

8

comfortable, were "fake," or were "dirty." They identified several European online resellers as the source for these products.

41.     Alcon began investigating the returned European products and determined that they were counterfeit, albeit well-made counterfeits. The barcodes and lot numbers were correct for the product names, corrective powers, and expiration dates, and the indicia of counterfeiting were more subtle, with the CIBA mark engraving incorrect or missing altogether from the lenses themselves, and the counterfeit products had printed rather than laser ablated barcodes, lot numbers, and expiration dates on their boxes and blister packs. The counterfeit products also had poor seals for the blister packs, meaning that the lenses and contact lens solution inside could not be sterile and were likely contaminated.

42.     While conducting the investigation, Alcon started to receive complaints from U.S. consumers regarding AIR OPTIX® NIGHT & DAY® AQUA contact lenses purchased from online resellers, including EZContacts, Lens.com, and LD Vision. Alcon investigated the returned products from these consumers and confirmed that they had similar indicia of counterfeiting to the European returns that it was already investigating.

43.     Because Alcon knew that Defendants, collectively, are one of the largest U.S. distributors of contact lenses, and that Defendant AVG often fulfills orders for EZContacts and LD Vision, and, on information and belief, is one source for products sold by Lens.com, on or around June 18, 2018, Alcon arranged for a large test purchase of AIR OPTIX® NIGHT & DAY® AQUA products from Defendants. The lenses are sold in a range of corrective "powers." Each power refers to the strength of the vision correction in the lens. For example, a power of "-1" provides relatively minor vision correction, while a power of "-6" provides more significant vision correction. Alcon sells its AIR OPTIX® NIGHT & DAY® AQUA lenses in power increments of .25. Alcon's test purchase included forty-five boxes of lenses in each of the twenty-one .25 incremental powers between "-1" and "-6," for a total of 945 boxes. Alcon received the boxes on June 29, 2018.

44.     Alcon has investigated the 945 boxes and confirmed 138 of them (nearly 15%) as counterfeit based upon similar indicia of counterfeiting in the secondary packaging, the primary packaging, and the lenses themselves that Alcon had seen recently in several returns. All forty-five of the boxes in each of the powers "-1," "-1.5," and "-2" were confirmed as counterfeit, and three of the boxes with the power of "-3" were confirmed as counterfeit.

45.     Alcon does not know the source of these counterfeit contact lenses.

9

46.     Although the authentic and counterfeit AIR OPTIX® NIGHT & DAY® AQUA products appear similar at first, a close inspection reveals numerous differences.

47.     The authentic AIR OPTIX® NIGHT & DAY® AQUA contact lenses have a tool code engraving on the lens with the CIBA mark, as shown in the picture below.



**Engraving on Authentic AIR OPTIX® NIGHT & DAY® AQUA Lens**

48.     The counterfeit lenses lack the tool code engraving altogether, or have an incorrect one, as shown in the pictures below.

 

**Counterfeit – No Tool Code Engraving**     **Counterfeit – Incorrect Tool Code Engraving**

49.     Additionally, the counterfeit lenses are made out of different material than that used for authentic AIR OPTIX® NIGHT & DAY® AQUA lenses.

50.     Alcon also tested a sample of the counterfeit lenses and determined that the diameters of some of the counterfeit lenses were materially different from the diameters printed on the packaging.

51.     There are also various discrepancies in the primary packaging for the lenses.  For example, the foil on the front of the individual counterfeit blister packs has different font sizes, colors, and placement for some words and symbols as compared to the authentic product.



Counterfeit                                                        Authentic

52.     Additionally, the placement and font of the "Made in Indonesia" text is different on the counterfeit blister packs, as is the background color gradient.



Counterfeit                                                        Authentic

53.     The AIR OPTIX® NIGHT & DAY® logo is significantly different on the counterfeit foil packs.



Counterfeit                                                        Authentic

11

54.     On the reverse side of the foil covering on the counterfeit products, the indentation of the lettering from the front shows that the print was stamped onto the foil.  The authentic AIR OPTIX® NIGHT & DAY® AQUA product does not use stamped print on the foil.  The authentic AIR OPTIX® NIGHT & DAY® AQUA product instead has the text laser ablated onto the foil; therefore, the reverse side of the foil does not show any indentation.



Counterfeit                                   Authentic

Counterfeit                                   Authentic

55.     The counterfeit blister pack shells are made out of an opaque plastic, while authentic Alcon shells are made out of a clearer plastic as illustrated in the photos below.

56.     A different font is used for the "CE" mark used to indicate conformity with European Union regulations.



**Counterfeit**                                    **Authentic**

sf-3916806

57.     Additionally, the recycling symbol and other symbols on the counterfeit blister pack shells are not consistent with authentic Alcon products, and are printed in a different location on the shell.



**Counterfeit**                          **Authentic**

58.     The counterfeit blister packs are poorly sealed, as shown by inconsistent seal width and bubbling within the seal area below.



**Counterfeit**                          **Authentic**

59.     All of these differences distinguish the primary packaging for the counterfeit product from the authentic AIR OPTIX® NIGHT & DAY® AQUA product.  The poor seal for the counterfeit blister packs also creates a safety risk for consumers because, even if the counterfeit lenses are manufactured under sterile conditions—which clearly *cannot* be known for counterfeit products—the products cannot remain sterile when the blister packs are poorly sealed and leak.

14

60.     The secondary, outside packaging for the counterfeit products also reveals differences from the authentic product.  For example, on the counterfeit boxes, the barcode has a smooth finish that is flush with the box on which it is printed, and the printed edges of the barcode are squared.  On the authentic boxes, on the other hand, the printed area for the barcode is recessed on, and therefore not flush with, the box on which it is printed, and the printed edges are rounded.



|                     |                     |
| :-----------------: | :-----------------: |
| **Counterfeit**     | **Authentic**       |

61.     In addition, the different appearance caused by the use of printing versus laser ablation is apparent in the Quick Response (QR) Code on the secondary packaging.  The use of laser ablation to imprint the QR Code on the authentic AIR OPTIX® NIGHT & DAY® AQUA boxes results in rounded edges on the pattern that are caused by the use of a laser beam with a circular aperture.  In contrast, the QR Code on the counterfeit boxes lacks the rounded edges.

 

|                     |                     |
| :-----------------: | :-----------------: |
| **Counterfeit**     | **Authentic**       |

15

62.     Further, the location and pattern of perforations on the boxes differ, as shown in the photograph below.



**Counterfeit**                                   **Authentic**

63.     The shape and size of the pixels that form the color gradient pattern on the secondary packaging in the counterfeit product are different from the shape and size of the pixels that form the color gradient pattern on the authentic packaging.



**Counterfeit**                                   **Authentic**

16

sf-3916806

64.    The AIR OPTIX® NIGHT & DAY® AQUA logo is a different shade of blue on the counterfeit boxes than on the authentic Alcon boxes.  The ampersand (the "&" symbol) is different on the counterfeit boxes and the authentic boxes.



**Counterfeit**                                    **Authentic**

65.    On the back of the secondary packaging, the font size is different on the counterfeit boxes for the Global Trade Item Number (GTIN).



**Counterfeit**                                    **Authentic**

sf-3916806

66.    The counterfeit boxes have a yellow tint when compared to the authentic boxes.



**Counterfeit**                    **Authentic**

67.    The side panel of the secondary packaging features the lens parameter label.  The counterfeit boxes have a different font than the font that appears on the authentic boxes for this label, shown by the squared edges of the "minus" symbol in the corrective power indication of the prescription.



**Counterfeit**                    **Authentic**

sf-3916806

### E.    Harm to Alcon and Consumers

68.    The counterfeits have been manufactured by unknown criminals at unknown locations.  Therefore, Alcon has no knowledge of the conditions under which the counterfeits were manufactured and cannot vouch for the safety of the counterfeit lenses but it knows that they cannot be sterile because the seals are poor on the counterfeit blister packs holding the lenses and testing showed leakage from some of the blister packs.  Although the counterfeit products received from Defendants are still undergoing exhaustive testing, Alcon has completed microbial testing on some of the counterfeit products that were previously returned by U.S. consumers and has found that the contact lens solution holding the lenses is contaminated with microbes.  Sterile solution would not contain any microbes.

69.    Alcon also cannot vouch for the efficacy of the counterfeit lenses.  In fact, Alcon has found that the material from which the counterfeit lenses are made differs from the authentic products, and some customers have complained that the counterfeit lenses were "uncomfortable."

70.    Alcon believes that Defendants are obtaining the counterfeit lenses through unauthorized distribution channels from outside of the United States.  Defendants know that purchases of lenses through unauthorized distribution channels, particularly from outside of the United States, pose risks to consumers.  Despite knowing of those risks, Defendants continue to import contact lens products from unauthorized distribution channels and to sell them in the United States.

71.    Defendants are intentionally and knowingly selling counterfeit AIR OPTIX® NIGHT & DAY® AQUA contact lenses for the purpose of trading on the goodwill and reputation of Alcon, which is represented by the ALCON Contact Lens Marks.

72.    Each counterfeit product sold by Defendants represents not only a lost sale of a genuine Alcon product, but also direct harm to Alcon's brand and goodwill.  Defendants' sales of counterfeit AIR OPTIX® NIGHT & DAY® AQUA lenses are likely to cause irreparable harm to Alcon and consumers because consumers are likely to mistakenly assume that the Alcon lenses are genuine and meet all Alcon and FDA standards, when they do not.  This severely negatively impacts the safety and well-being of contact lens consumers while also harming Alcon's reputation and goodwill.  Alcon has already suffered serious harm as a result of Defendants' conduct because of customer dissatisfaction with the counterfeit products.

sf-3916806

73.     Defendants' willful conduct is continuing and will continue unless restrained by the Court.  If Defendants continue their wrongful conduct, Alcon is and will continue to be irreparably harmed, including through loss of goodwill and reputation.  Alcon has no adequate remedy at law.

## I.     FIRST CAUSE OF ACTION
## Counterfeiting Under 15 U.S.C. § 1114

74.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 73 above as if fully set forth herein.

75.     As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts.

76.     The acts of Defendants described above constitute counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

77.     Alcon has valid and protectable rights in each of the registered ALCON Contact Lens Marks.  These rights predate Defendants' first sale of counterfeit products.

78.     The ALCON Contact Lens Marks have come to signify the high quality of Alcon's contact lens products, and have incalculable reputation and goodwill, belonging exclusively to Alcon and its parent, Novartis AG.

79.     Defendants had actual knowledge of Alcon's ownership and use of the ALCON Contact Lens Marks prior to their use of these marks on counterfeit Alcon products.

80.     Alcon has not authorized Defendants to use any of the ALCON Contact Lens Marks in connection with counterfeit products.

81.     As described above, Defendants' unauthorized use of the ALCON Contact Lens Marks on counterfeit products has caused confusion and is likely to cause further confusion, mistake, or deception on the part of resellers and consumers as to the source, nature, and quality of the products Defendants are promoting and/or selling.  Defendants' conduct constitutes counterfeiting in violation of 15 U.S.C. § 1114.

82.     On information and belief, as a result of Defendants' counterfeiting of the ALCON Contact Lens Marks, Defendants have received and will continue to receive substantial profits to which they are not entitled, and Alcon has or will suffer actual monetary damages, including lost profits and impairment of the value of the ALCON Contact Lens Marks.

83.     As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts,

20

and unless enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Alcon has no adequate remedy at law.

84.     On information and belief, Defendants have acted maliciously and willfully to usurp Alcon's rights, and Defendants should be held liable to Alcon for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(b).

## II.     SECOND CAUSE OF ACTION

### Trademark Infringement Under 15 U.S.C. § 1114

85.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 84 above as if fully set forth herein.

86.     The acts of Defendants described above constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

87.     As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts.

88.     Alcon has valid and protectable registered rights in the ALCON Contact Lens Marks and has used the ALCON Contact Lens Marks in connection with its sale of AIR OPTIX® NIGHT & DAY® AQUA products since prior to Defendants' first use of them.

89.     The Alcon Contact Lens Marks have come to signify the high quality of Alcon's contact lens products, and have incalculable reputation and goodwill, belonging exclusively to Alcon and its parent, Novartis AG.

90.     Defendants had actual knowledge of Alcon's ownership and use of the ALCON Contact Lens Marks prior to their use of these marks on counterfeit Alcon products.

91.     Alcon has not authorized Defendants to use any of the ALCON Contact Lens Marks in connection with counterfeit products.

92.     As described above, Defendants' unauthorized use of the ALCON Contact Lens Marks on counterfeit products has caused confusion and is likely to cause further confusion, mistake, or deception on the part of resellers and consumers as to the source, nature, and quality of the products Defendants are promoting and/or selling. Defendants' conduct constitutes trademark infringement in violation of 15 U.S.C. § 1114.

93.     On information and belief, as a result of Defendants' unauthorized use of the ALCON Contact Lens Marks, Defendants have received and will continue to receive substantial profits to which they are not entitled, and Alcon has or will continue to suffer actual monetary damages, including lost profits and impairment of the value of the ALCON Contact Lens Marks.

sf-3916806

94.     As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate remedy at law.

95.     On information and belief, Defendants have acted maliciously and willfully to usurp Alcon's rights, and Defendants should be held liable to Alcon for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### III.     THIRD CAUSE OF ACTION
#### Trademark Infringement Under Florida Common Law

96.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 95 above as if fully set forth herein.

97.     The acts of Defendants described above constitute trademark infringement under the common law of Florida.

98.     As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts.

99.     Alcon has valid and protectable rights in the ALCON Contact Lens Marks and has used the ALCON Contact Lens Marks in connection with its sale of AIR OPTIX® NIGHT & DAY® AQUA products since prior to Defendants' first use of them in connection with counterfeit products.

100.     The ALCON Contact Lens Marks have come to signify the high quality of Alcon's contact lens products, and have incalculable reputation and goodwill, belonging exclusively to Alcon and its parent, Novartis AG.

101.     Defendants had actual knowledge of Alcon's ownership and use of the ALCON Contact Lens Marks prior to their use of these marks on counterfeit Alcon products.

102.     Alcon has not authorized Defendants to use any of the ALCON Contact Lens Marks in connection with counterfeit products.

103.     As described above, Defendants' unauthorized use of the ALCON Contact Lens Marks on counterfeit products has caused confusion and is likely to cause further confusion, mistake, or deception on the part of resellers and consumers as to the source, nature, and quality of the products Defendants are promoting and/or selling.  Defendants' conduct constitutes trademark infringement.

sf-3916806

104.    On information and belief, as a result of Defendants' unauthorized use of the ALCON Contact Lens Marks, Defendants have received and will continue to receive substantial profits to which they are not entitled, and Alcon has or will continue to suffer actual monetary damages, including lost profits and impairment of the value of the ALCON Contact Lens Marks.

105.    As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate remedy at law.

## IV.    FOURTH CAUSE OF ACTION

### Unfair Competition Under Florida Common Law

106.    Alcon repeats and realleges each allegation set forth in paragraphs 1 through 105 above as if fully set forth herein.

107.    The acts of Defendants described above constitute unfair competition under the common law of Florida.

108.    As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts.

109.    Alcon has valid and protectable rights in the ALCON Contact Lens Marks and has used the ALCON Contact Lens Marks in connection with its sale of AIR OPTIX® NIGHT & DAY® AQUA products since prior to Defendants' first use of them in connection with counterfeit products.

110.    The ALCON Contact Lens Marks have come to signify the high quality of Alcon's contact lens products, and have incalculable reputation and goodwill, belonging exclusively to Alcon and its parent, Novartis AG.

111.    Defendants had actual knowledge of Alcon's ownership and use of the ALCON Contact Lens Marks prior to their use of these marks on counterfeit Alcon products.

112.    Alcon has not authorized Defendants to use any of the ALCON Contact Lens Marks in connection with counterfeit products.

113.    As described above, Defendants' unauthorized use of the ALCON Contact Lens Marks on counterfeit products has caused confusion and is likely to cause further confusion, mistake, or deception on the part of resellers and consumers as to the source, nature, and quality of the products Defendants are promoting and/or selling.  Defendants' conduct constitutes unfair competition.

sf-3916806

114.    On information and belief, as a result of Defendants' unauthorized use of the ALCON Contact Lens Marks, Defendants have received and will continue to receive substantial profits to which they are not entitled, and Alcon has or will continue to suffer actual monetary damages, including lost profits and impairment of the value of the ALCON Contact Lens Marks.

115.    As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate remedy at law.

## V.    FIFTH CAUSE OF ACTION

### Violation of the Florida Deceptive and Unfair Trade Practices Act
### Under Fla. Stat. §§ 501.201, *et. seq.*

116.    Alcon repeats and realleges each allegation set forth in paragraphs 1 through 115 above as if fully set forth herein.

117.    The acts of Defendants described above constitute trademark infringement and unfair competition, and thus are deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et. seq.*

118.    The purpose of the Florida Deceptive and Unfair Trade Practices Act is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

119.    As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts.

120.    Alcon has valid and protectable rights in the ALCON Contact Lens Marks and has used the ALCON Contact Lens Marks in connection with its sale of AIR OPTIX® NIGHT & DAY® AQUA products since prior to Defendants' first use of them in connection with counterfeit products.

121.    The ALCON Contact Lens Marks have come to signify the high quality of Alcon's contact lens products, and have incalculable reputation and goodwill, belonging exclusively to Alcon and its parent, Novartis AG.

122.    Defendants had actual knowledge of Alcon's ownership and use of the ALCON Contact Lens Marks prior to their use of these marks on counterfeit Alcon products.

24

sf-3916806

123.    Alcon has not authorized Defendants to use any of the ALCON Contact Lens Marks in connection with counterfeit products.

124.    As described above, Defendants' unauthorized use of the ALCON Contact Lens Marks on counterfeit products has caused confusion and is likely to cause further confusion, mistake, or deception on the part of resellers and consumers as to the source, nature, and quality of the products Defendants are promoting and/or selling.

125.    On information and belief, as a result of Defendants' unauthorized use of the ALCON Contact Lens Marks, Defendants have received and will continue to receive substantial profits to which they are not entitled, and Alcon has or will continue to suffer actual monetary damages, including lost profits and impairment of the value of the ALCON Contact Lens Marks.

126.    As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate remedy at law.

127.    Pursuant to Fla. Stat. § 501.211, Alcon is entitled to injunctive relief, damages, and attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Alcon prays for relief as follows:

1.    That judgment be entered in favor of Alcon and against Defendants on each and every Cause of Action of this Complaint;

2.    For entry of an order and judgment requiring that Defendants and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined during the pendency of this action and permanently thereafter from (a) using in any manner any of the ALCON Contact Lens Marks in connection with the import, offer for sale or sale, or shipment of any counterfeit product; (b) doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public, or prospective customers of Alcon's products. as to the source of the counterfeit products offered for sale, distributed, or sold by Defendants, or likely to deceive members of the public, or prospective customers, into believing that there is some connection between Alcon and Defendants or any other entity owned by or associated with Defendants as a result of Defendants' importation, sales, or shipment of counterfeit Alcon

25

products; (c) further infringing any trademark owned by Alcon and damaging Alcon's goodwill by using such trademarks in connection with the importation and sales of counterfeit Alcon products; and (d) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c);

3.      For entry of an order and judgment requiring Defendants to procure AIR OPTIX® NIGHT & DAY® AQUA lenses directly from Alcon in conformity with the standards and conditions imposed on all others who purchase directly from Alcon during the pendency of this action;

4.      For entry of an order and judgment directing Defendants to issue corrective action letters to all customers, resellers, eye care practitioners, and anyone else to whom they have sold or shipped AIR OPTIX® NIGHT & DAY® AQUA products since July 1, 2017 notifying them that the products may have been counterfeit and should not be worn;

5.      For entry of an order and judgment directing Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Alcon within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and ceased all importing, offering, sale, and shipment of counterfeit products under the ALCON Contact Lens Marks as set forth above;

6.      For entry of an order and judgment directing Defendants, pursuant to 15 U.S.C. § 1118, to deliver up for destruction all counterfeit products in the possession, custody, or under the control of Defendants or their agents bearing the ALCON Contact Lens Marks in any manner, or any mark that is confusingly similar to or a colorable imitation of the ALCON Contact Lens Marks;

7.      A judgment in the amount of Defendants' profits, Alcon's actual damages, and the costs of this action pursuant to 15 U.S.C. § 1117;

8.      That the Court award enhanced damages under 15 U.S.C. § 1117;

9.      That the Court award Alcon's reasonable attorneys' fees under Fla. Stat. § 501.2105 and under the Lanham Act; and

10.     That the Court grant such other and further relief as it deems just and proper.

sf-3916806

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues so triable under the law as provided by Rule 38(a) of the Federal Rules of Civil Procedure.


Dated: July 18, 2018

By: _____

**MARCUS NEIMAN & RASHBAUM LLP**
Michael A. Pineiro
Florida Bar No. 041897
mpineiro@mnrlawfirm.com
Daniel L. Rashbaum
Florida Bar No. 75084

2 South Biscayne Boulevard, Suite 1750
Miami, Florida  33131
Tel: (305) 400-4268
Fax: (954) 688-2492

-and-

**MORRISON & FOERSTER LLP**

Jamie A. Levitt (*pro hac vice* application pending)
Sarah L. Prutzman (*pro hac vice* application pending)
250 West 55th Street
New York, New York  10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email:  JLevitt@mofo.com
            SPrutzman@mofo.com

Jennifer Lee Taylor (*pro hac vice* application pending)
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email:  JTaylor@mofo.com

*Attorneys for Plaintiff*
ALCON LABORATORIES, INC.